Jesús Figueroa Torres and his wife Carmen Boneta, Plaintiffs and Appellants, *v.* Juan Boneta Valencia, Defendant and Appellee.

No. 8204.  Argued April 8, 1941.—Decided June 9, 1941.

*Pedro E. Anglade,* for appellants.  *Néstor A. Boneta* and *Diego E. Ramos,* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

This case deals with the alleged nullity of a mortgage foreclosure and a claim of damages.

Three causes of action are set forth in the complaint. The first is based on the fact that after the plaintiff spouses had borrowed $2,500 from the defendant and had pledged themselves to return said sum within the period of one year counted from December 29, 1924, with interest at 12 per cent per annum payable in monthly instalments, they mortgaged, in order to guarantee the debt and its interest, a house which belonged to them situated in Arecibo and used as a bakery, with a kneading machine and other equipment, and on the fact that defendant, on June 22, 1934, initiated a summary foreclosure proceeding which is null and void because the plaintiff in this action alleged falsely in his initial petition that interest was owed when the truth was that the only interest guaranteed by the mortgage had been duly paid.

The second cause of action is based on the fact that the foreclosed building has produced an income mounting to $5,400, while in the possession of the defendant, and the third cause of action arises from the fact that the defendant appropriated illegally the bakery equipment which was not subject to the lien and which was worth $2,500.

In his answer, the defendant denied plaintiffs' allegation that they did not owe the interest which had been claimed. He also denied that the mortgaged building produced $5,400 and that he appropriated illegally the bakery equipment.

As a special defense he alleged that since the plaintiffs had not paid the debt in spite of the many extensions granted, he foreclosed the mortgage which guaranteed the debt and acquired the mortgaged property at a public auction, the corresponding deed being executed in his favor on April 25, 1936. He alleged, furthermore, that he rented the same building to the plaintiff Figueroa for $21 a week and that he had to eject him from it by judicial proceedings, because he failed to pay the rent.

On March 8, 1939, the plaintiffs asked the court to render judgment on the pleadings. Their motion was not decided immediately and when the case was called for trial

on September 21, both parties agreed to submit it to the court "with the same evidence as that offered in the main case in order that the court should decide it before rendering judgment." After the trial had been held, the court, on October 2, 1939, rendered judgment for defendant with costs, not including attorney's fees. In its opinion, the district court expressed itself as follows:

"The fact that nothing was said in the contract concerning the rate of interest which should be collected if the debtor failed to pay, does not mean, as plaintiffs claim, that Boneta could not compel the debtor to pay any interest, if Figueroa had not paid the principal and remained in possession of of the property after December 29, 1925. As no rate of interest was stipulated to cover a possible default, the creditor had a right to collect legal interest, from the date the debt fell due. We observe furthermore that in the mortgage deed the property's liability for unpaid interest was not limited to a specified sum, but instead, the fourth clause of the contract clearly says that the encumbered property is liable for the principal and its interest."

Then, with respect to the testimony of the plaintiff and the defendant at the trial, the court stated:

"The evidence shows that Figueroa did not pay the principal on the date of maturity and continued in possession and enjoyment of the property for many years after the date of maturity of the mortgage. He himself testified that he continued to pay interest to Boneta for some time after said date of maturity. This admission induces us to believe Boneta's testimony, insofar as it states that when the original contract fell due in December, 1925, they both agreed to renew it under the same conditions and at the same rate of interest. If that is so, then the foreclosure proceeding cannot be invalidated because a rate of interest higher than the legal rate was charged after the date of maturity, since the will of the parties that the contract should continue indefinitely, duly ratified by the evidence, had to prevail, since such an agreement was not illegal."

In our opinion the judgment appealed from is not well grounded. The case has to do with the nullity of a mortgage foreclosure proceeding in whose prosecution the

debtor does not intervene. Such a proceeding is based on the initial petition filed by the creditor, on the mortgage debt and on the certificate of the registrar of property with respect to the pendency of the lien. In such a proceeding, every requirement must be complied with strictly.

In this case, the creditor asserted in his initial petition filed on June 22, 1934:

"1.  *  *  *  *  *  *  *

"2. That on December 29, 1924, the defendants by deed No. 94 executed before the Notary Herminio Miranda in the City of Arecibo acknowledged that they owed the plaintiff Juan Boneta Valencia, the sum of $2,500 which they pledged themselves to pay with interest at 12 per cent per annum within the term of one year.

"3. That the debt fell due on December 3, 1925.

"4. That to guarantee the principal, interest and an additional sum of $500 for costs, expenses and attorney's fees in case of litigation, the defendants mortgaged the following property in favor of the plaintiff Juan Boneta Valencia: (the property is here described).

"5. That the defendants have failed to pay the plaintiffs nine months interest, which at 1 per cent, mounts to $225.

"  *  *  *  *  *  *  *

". . . That according to the certificate issued by the Registrar of Property of the District of Arecibo, said mortgage has not been cancelled in the Registry of Property of Arecibo.

"For the above mentioned reasons the plaintiff requests the court to issue an order requiring the defendants to pay the plaintiff, within thirty days after having been notified by the marshal, the sum of $2,500 as principal, $500 for costs, expenses and attorney's fees and $225 for interest due but not paid."

The clauses of the original contract guaranteed by the mortgage were inserted in the initial petition, and copied literally they read as follows:

"*Third*.—Jesús Figueroa Torres states that he has received as a loan before this date, the sum of $2,500 from Juan Boneta Valencia, which sum he pledges himself to return within one year counted from today, with interest at 12 per cent per annum, payable in monthly instalments, and it being understood that the debtor may pay the total of the debt within six months if he so wishes.

"*Fourth.*—In guaranty of the payment of the loan of $2,500 as principal, of its interest at the stipulated rate and of an additional sum of $500 for costs and attorney's fees in case of litigation, Jesús Figueroa Torres personally and as the attorney in fact of his wife, Carmen Boneta, mortgages the lot and house described in the second paragraph of this deed in favor of Juan Boneta Valencia, of age, property owner, married to Consuelo Martínez and a resident of this City."

From the certificate of the registrar, which forms a part of the initial petition, it appears that the lien is still pending.

On the same day, June 22, 1934, the lower court ordered that the debtor be required to pay. This was done, but he did not pay. On August 29, the court ordered:

"That the plaintiff Juan Boneta Valencia collect his credit mounting to the sum of $2,500 as principal of the debt guaranteed by the mortgage, and due but not paid, plus $225 as sum total of the interest on said principal, agreed upon at 12 per cent per annum and likewise due but not paid, that is, nine months' interest, and $500 more which the defendants agreed to pay the plaintiffs as a penalty for costs, expenses and attorney's fees in case of litigation, all these to be collected through the sale of the urban property which was mortgaged, . . ."

The sale took place on October 22, 1934, and the property was adjudicated to the creditor as the only bidder who appeared at the auction, for $500 which were to be charged to his account, and the corresponding deed of sale was executed by the marshal on April 25, 1936, that is, a year and a half afterwards. On June 1, 1936, the purchaser was placed in possession of the property by judicial decree.

█ It can be easily seen therefore that the nine months interest at 12 per cent per annum which was collected within the summary foreclosure proceeding was not guaranteed by the mortgage and for that reason, even if said interest were really owed, it could not be collected through the means chosen by the creditor.

█ The verbal agreement which the creditor and the debtor reached after the debt had fallen due, according to

the testimony of the defendant at the trial, to which the court gave credit, cannot have the same effect as a mortgage, which by law must be executed by public deed and recorded in the registry before it can serve as the basis for a summary mortgage foreclosure.

With respect to the holding of the lower court that although it was not expressly contracted, the creditor could always collect interest after default *(intereses de mora)* in accordance with Sections 1053, 1054 and 1061 of the Civil Code, 1930 ed., the question is not new in this jurisdiction. In the case of *Caraballo* v. *Registrar,* 48 P.R.R. 902, 904, this Court said, ratifying and applying the doctrine of *Goico* v. *Rodríguez et al.,* 28 P.R.R. 492:

"The original contract contained no provision concerning the rate of interest in the event of nonpayment at maturity. In the absence of any such provision the mortgagees, if they had brought an action on the original contract, could not have recovered interest at more than 6 per cent after the date of maturity and default. See section 1061 of the Civil Code, 1930 ed.; *Goico* v. *Rodríguez et al.,* 28 P.R.R. 492; *Cook* v. *Fowler,* 14 E.R.C. 546 and other cases cited in 33 C. J. 226, section 111, and decision of the Supreme Court of Spain, June 7, 1922, 156 *Jur. Civ.* 464."

See also *Aldrey* v. *Registrar,* 49 P.R.R. 54, *Muñoz* v. *Nieves,* 53 P.R.R. 331 and *Cabrera* v. *Morales,* 57 P.R.R. 445.

But since the interest collected was not computed at the legal rate we must conclude that the executor exceeded his rights and this makes null and void every action taken at his request.

Thus, in *Vázquez* v. *Gutiérrez,* 52 P.R.R. 162, 171, this Court said:

"From the complaint herein it appears that the mortgage was constituted for a term of eleven months and thirteen days to secure the payment of $1,041.00 principal and 'the amount of interest thereon for the term of the contract' at the rate of 12 per cent per annum payable monthly. It further appears that after the filing of the amended petition in the foreclosure proceeding the district

court ordered the issuance of a demand for payment (*a*) of $1,000 as balance due on the principal, because the mortgage debtor had paid $41 on account thereon and (*b*) of $10 as interest due and owing as the last monthly instalment for October, 1932, because the mortgage debtor had paid $120 interest corresponding to the year for which the mortgage was constituted and $960 as interest after default (*intereses de mora*) by agreement between the parties. Obviously, the $10 interest for October, 1932, was not covered by the mortgage and because of the inclusion of the item in the order directing the issuance of a demand for payment, the foreclosure proceeding was a nullity.''

And it had been held previously in *Santos* v. *Crédito y Ahorro Ponceño*, 41 P.R.R. 934, 936:

''The question is whether or not the amounts sought to be recovered as interest and expenses incident to the execution and recordation of the instrument were secured by the mortgage. The district court held that they were so secured.

''The district judge relied upon Articles 114 and 147 of the Mortgage Law which read as follows:

'' 'Art. 114.—A mortgage constituted to secure a credit which earns interest, shall secure with regard to third person, in addition to the principal, only the interest for the two years last past and that part of the current year which may have accrued.

'' 'Art. 147. A mortgage creditor may proceed against the property mortgaged to recover interest due, no matter at what time the principal is payable; but if there should be a third person interested in said property whom the proceedings might prejudice, the sum demanded cannot exceed a sum representing the unpaid interest due for the two years last past and the part due for the current year.'

''These articles presuppose the existence of a mortgage to secure interest as well as principal. In the case of *Figueroa et al.* v. *Ramírez et al.* 36 P.R.R. 826, (also relied upon by the district judge) there was such a mortgage.

''In the instant case the language of the clause whereby the mortgage was created is too plain to admit of construction. The fact that the mortgagor in subsequent paragraphs of the same instrument assumed certain personal obligations cannot operate an extension of the mortgage so as to secure the performance of such obligations, in the absence of any evidence of such an intention. Neither the interest on the indebtedness to the bank nor the money

paid by it to the notary and to the registrar of property was included in the mortgage. The foreclosure proceeding was a nullity. This result is not affected by the fact (also pointed out by the trial judge) that in prorating the proceeds of the sale between the bank and Benigno Díaz, the bank, (after acquisition of the mortgaged property) waived its claim to interest and re-imbursement of the money expended in notary and registry fees.''

Sometime later, in *Martorell* v. *Crédito y Ahorro Ponceño*, 42 P.R.R. 632, 637, in applying the *Santos* case, *supra*, the peculiar nature of the summary foreclosure proceeding was pointed out in the following terms:

''The special proceeding involved here is a summary one wherein a great many requirements of the old foreclosure procedure have been abolished in the interest of certain guarantees, which we might term extraordinary, existing for the benefit of the creditor, but without eliminating other guarantees which the mortgage debtor had always enjoyed since the establishment of mortgages, although the majority of the means of defense that in an ordinary proceeding could be used, more or less successfully, more or less validly, by such debtor were suppressed. But the very extraordinary character of this proceeding and the absence of said means of defense demand from the creditor a rigorous and strict compliance with the statutory provisions, without omitting any of the requirements that the law prescribes not only in order that the proceeding will exhibit all the necessary marks of legality but also that the judge called upon to pass upon the petition and documents attached thereto will feel justified in issuing the writ demanding payment of the debtor in the drastic and speedy form provided under such proceeding.''

■ After invalidating the foreclosure proceeding, we must consider and decide the case with respect to the second and the third causes of action exercised in the same.

By the second cause of action the earnings which the plaintiffs failed to receive from the property are claimed —rents at the rate of $150 a month.

This claim, in our opinion, was not proven in all its extent, but there is a fact furnished by the defendant himself which shows with exactitude what the property yielded, that is: the contract by which said property was rented for

$90 a month. The sum paid for taxes, as accredited by the official receipts, must, however, be discounted from the sum total to be paid as earnings which the plaintiffs failed to receive.

In the third cause of action, the plaintiffs claim $2,500 as the value of the machines and bakery equipment installed in the building object of the foreclosure proceeding.

Parol evidence was offered in support of this claim. The plaintiff testified that the total cost of the equipment was about $1,163. He also estimated the cost of each of its parts. Another witness, Angel Miranda, who had been engaged in the bakery business for about twenty years, assessed it at $1,490. A great difference can be seen between the two testimonies. The plaintiff himself says, for example, that the kneading machine, which had been in use for about a year and a half, cost him $450 and the cylindrical lathe $150. His expert witness, however, appraised the same machines at $500 each.

The defendant merely testified that when the marshal delivered the property to him, the following things were in it: two or three bags, old and dirty; three or four tables; two trestles and two kneading machines; two kneading troughs; and he added that all this, as it then was, was not worth more than twenty-five or thirty dollars. He also testified that after he took possession of the building, he spent about $500 repairing the bakery because the oven was completely destroyed, the lathe did not function and he had to buy a new one which cost him $300; that he spent $200 more for belts and in general repairs; that the kneading machine cost him about $60 for repairs and that he had to spend $25 to repair the motor, since it was likewise in a bad state.

It is difficult in truth to fix the exact value of the equipment. The testimony of the expert witness of the plaintiffs is exaggerated and even more exaggerated is the testimony of the defendant. The testimony of the plaintiff

refers to the cost of the machines when they were bought, the plaintiff admitting that they had already been in use for more than a year. Under these circumstances we deem it reasonable to set the value of the equipment at $1,000, as we must bear in mind that nothing can be granted the plaintiffs with respect to the $1,500 claimed as general damages, since there is no specific evidence in support of said allegation in spite of the fact that it is evident that he necessarily suffered some damage.

The judgment appealed from must be reversed and another rendered in its place by virtue of which the summary foreclosure proceeding is invalidated, and the defendant is ordered to return to the plaintiffs the property object of the foreclosure proceeding and to pay them the equivalent of $90 a month computed from June 1, 1936, until its return, less whatever sum he has paid to the State for taxes upon said property, plus $1,000, at which the bakery equipment is valued, and the costs, including $200 for attorney's fees. This judgment is rendered without prejudice to defendant's right to claim from the plaintiffs the payment of his credit and to withdraw from the house the bakery equipment whose value he is ordered to pay.